**JENNINGS et, Plaintiffs-Appellants, v. JENNINGS et, Defendants-Appellees.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3265. Decided June 13, 1949.

Eugene Green, Youngstown. for plaintiffs-appellants.
Howard M. Metzenbaum, Cleveland, for defendant-appellee,

International Association of Machinists, District No. 14, Local Lodge No. 404.

John J. Lynch, Jr., Youngstown, for defendant-appellee, Local Lodge No. 404 and the Officers thereof.

Harrington, Huxley & Smith, Youngstown, for defendant-appellee, Truscon Steel Company.

## OPINION

By PHILLIPS, PJ.

Plaintiffs, representing themselves and all others similarly situated, namely minority group members of or represented by a voluntary labor organization, referred to hereinafter as the union, and acting in a capacity and for a purpose fixed by federal law, commenced an action in equity in the court of common pleas in which they sought an injunction against defendants from distributing a fund to persons to which and to whom reference is made herein later, a decree ordering the negotiation of a new collective bargaining agreement for the distribution of such fund in a manner different than that agreed upon previously, and other equitable relief.

In their petition filed in the court of common pleas plaintiffs alleged that defendant union is a voluntary unincorporated association duly certified as the exclusive bargaining agency for all machine shop employees of defendant corporation Truscon Steel Company, referred to here as the corporation, of which they are employees; that on July 21, 1947, the union entered into a collective bargaining agreement with the corporation, which provided inter alia that employees of that corporation who had suffered wage rate inequities from December 25, 1943, to March 31, 1947, should receive individual "lump sum" payments covering any amounts owed such employees during that retroactive period of time; that plaintiffs suffered "the vast preponderance of wage rate inequities"; that the corporation agreed to calculate such individual payments "as promptly as practicable after the date on which the assigned standard hourly wage rates became officially established", and to disburse them to qualified employees "in accordance with an understanding to be reached" between the union and the corporation, which provided, among other things, that the total hourly payment should not exceed

3⅝ cents an hour for each .hour worked during such period by all of the employees of defendant corporation represented by the bargaining unit; that effective April 1, 1947, all jobs represented by this unit were classified and assigned a standard hourly rate, and that the difference between the standard hourly rate assigned to the classification of any employee and the one he had previously received has been paid to each individual employee; that this difference of intra-plant wage inequity is far greater among employees in the bargaining unit who are not machinists nor die makers, as the majority of the members of such union are, than other members of such unit; that to prevent the agreed sum as inequity payments for the period prior to April 1, 1947, being allocated to the individual by the application of the same standard as used for the period after that date the majority of the union, who were machinists and die makers, voted at a union meeting to authorize the defendant corporation to pay each employee in the bargaining unit 3⅝ cents an hour for each hour worked during the retroactive period; that such agreement between the union and the corporation was executed on March 22, 1948; that such proposal and agreement violated legal and equitable principles, because it distributes money to members who during the retroactive period suffered no inequity or one less than 3⅝ cents an hour at the expense of those who had suffered inequity; that the "union devised a scheme to deprive plaintiffs of the money they earned under the wage inequity agreement; and that the union "knowingly and deliberately set out to benefit the majority of the defendant union's members" by such distribution.

Both defendants, union and corporation, demurred to plaintiffs' petition on the grounds principally that the court of common pleas had no jurisdiction over the subject matter of the action, and that the facts alleged therein are not sufficient to constitute a cause of action against them.

Equity has very limited jurisdiction over the union, a voluntary organization, and as long as it acted in accordance with its valid rules, within the scope of the object for which it was formed, and with fidelity to any fiduciary duties it owed its members, equity will not interfere in an action brought by any of its members, and will not grant it relief in such an action when such relief can be obtained within the union. However, when it exceeds its powers, disregards its own rules, or does not observe its fiduciary duties, equity may enjoin it in an action such as we review.

The voluntary labor union, whose action is under review, was acting in a special statutory capacity and under and in

accordance with the provisions of Section 9 (a) of the National Labor Relation Act which provides:—

"Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, hours of employment, or other conditions of employment."

The foregoing section of the National Labor Relations Act also provides that the designated representative body must file with it a copy of its constitution and by laws; and a report showing, among other things, the procedure to be followed as to meetings, authorization for bargaining demands and ratification for contract terms.

Obviously the questions presented to the trial judge for decision were whether, as shown by allegations of the petition, the union, as bargaining agent, acted within the law and its power as such agent in concluding the agreement of March, 1948, and whether it violated any fiduciary duty it owed any of its individual members in the executed agreement; and the question presented to this court is whether the trial judge reached a correct conclusion in disposing of that question.

In the case we review, the union, acting as statutory representative in the collective bargaining contract with the corporation, has the responsibility of representing the interests of all the employees, minority as well as majority members, fairly and in good faith, without hostile discrimination nor impartiality; and was responsible for giving notice to all such members and employees of and opportunity for hearing upon its proposed action. 323 U. S. 192, 248.

The subject matter of the agreement, to which reference is made, was clearly within the power of the union as it obtained from the company an amount representing 3⅝ cents times the number of hours worked by all men in the bargaining unit during the retroactive period as an addition to the pay already received.

In conformity with the will of the majority and with its own rules of procedure the union, the association, could devote such amount representing additional pay, a result within the legal purpose of the union, to the purpose for which it was obtained by providing for its distribution to those for whom it was acting. See 5 C. J. C. 40, 72.

It did this by providing that each employee who worked on any position in the bargaining unit should be paid 3⅝

cents for each hour worked during the retroactive period; which constituted a flat rate payment for every one in the bargaining unit, and ignored as to each individual the relation between the actual rate of pay earned by him and the standard rate later set for his job classification. It amounted to an equal wage increase for all such employees for the period named.

The petition attacks this method of distribution as a violation of a fiduciary duty by the union, as bargaining agent, because it made an agreement in effect distributing among the majority sums of money allowed for inequities suffered almost wholly by the minority group. From this minority standpoint an element of discrimination and unfairness appears; and from that point of view the action taken might be interpreted as having resulted from the tyranny of majority rule.

However, any beneficiary of such agreement may proceed in equity to compel the trustees to execute the trust; and a member of the union who can establish the existence of a trust impressed upon its property, of which he is a beneficiary, may sue to enforce it as an individual. Wrightington, Unincorporated Associations, p. 241.

Coming now to consider the sum secured, the distribution of which is in question, we must decide whether the union, as the bargaining agency, stands in the relation of a fiduciary to its members as beneficiaries. By the agreement executed July 21, 1947, the company agreed to pay an arbitrary determined amount to cover wage rate inequities for a certain retroactive period, and to disburse same to qualified individuals. "in accordance with an understanding to be reached" between the company and the union.

As stated heretofore, as the result of authorization by a majority vote at a union meeting, over the protests of the minority, this agreement was executed on March 22, 1948.

By the understanding of July 21, 1947, and agreement of March 22, 1948, no identifiable individual shares nor interests were impressed on the amount arrived at which would require a court of equity to consider such sum a trust fund. By such majority action, each person represented shared in the fund; though it appears not in accordance with the sense of justice nor fairness to each such person.

Since such fund was created within the legal scope of the union's activities as exclusive bargaining agent, the majority of its members, acting in compliance with the laws and useages of the association in a regular and open meeting possessed authority to control the agent's action as to the distribution of such fund. Accordingly, in the absence of collusion or

discrimination amounting to fraud, and we find no charge of fraud as such made, resort to the intervention of a court of equity can not be had against the legal action of a majority, no matter how mistaken nor oppressive from a minority viewpoint such majority action may be.

As a general rule, courts will not interfere with the internal affairs of an organization such as the union was, nor attempt to make new contracts for the parties, particularly where the parties are a labor union on the one hand and an employer on the other. Courts have protected the right of union·members in enforcing an agreement made for their benefit, but courts have never gone so far as to order a new contract made at the request of a few dissatisfied members of the union.

The collective bargaining system and process would collapse eventually if in cases such as we review plaintiffs, dissatisfied minority members of a bargaining unit, could successfully invoke the jurisdiction of a court of equity to enjoin action by the majority members thereof, acting in accordance with the terms of an existing collective bargaining agreement, and compel the execution of a new contract, and thereby thwart the expressed will of the majority of the members of the union.

The rule of the majority is deeply rooted in our system of government, and is applicable to labor relations both within unions and in their dealings with employers as it is in all other relationships of life where it is applicable; and the supreme court of the United States has held collective bargaining agreements, such as that under consideration in the case we review, do not establish, but merely govern, the terms of the relationship existing between the union and the corporation.

In our opinion the petition does not allege a justifiable controversy between the union and the corporation, which is not concerned with and has no right nor authority to interfere with a strife between the members of nor a dispute within the union. We believe that before plaintiffs can invoke the jurisdiction of a court of equity in the case we review they must exhaust, and allege that they have exhausted, their remedies within the union or before administrative tribunals. See Brotherhood v. Railway Co., 159 Fed. (2d) 822; Tunstall v. Brotherhood, 323 U. S. 210.

Like the trial court we find no allegation of violation of any equitable right of which plaintiff may complain, nor for which he may obtain the intervention of a court of equity. The court did not err to the prejudice of the plaintiffs in

sustaining the several demurrers and dismissing plaintiffs' petition at their costs; nor as counsel for plaintiff contend in their assigned ground of errors "in concluding plaintiffs do not have an identifiable interest and enforcible interest in the equity pay fund", in "failing to find and rule as a matter of law that defendant union violated its statutory duty to represent plaintiffs without hostile discrimination", nor that "the judgment of the court is contrary to law".

The judgment of the court of common pleas is affirmed.

NICHOLS, J, BUCKLEY, J, concur in judgment.